

WILLIAM P. DENI, JR.
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4853 Fax: (973) 639-8373
wdeni@gibbonslaw.com

January 25, 2024

**VIA ECF**

Honorable Robyn F. Tarnofsky, U.S.M.J.
United States District Court
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street, Courtroom 9B
New York, New York 10007

> At this juncture, the Court is still considering the arguments set forth in, ECF No. 24, Plaintiff's letter motion to seal. In the meantime, the Court will temporarily seal Defendant Sprizzo's January 17, 2024 letter and the corresponding attachments.
>
> The Clerk of Court is directed to seal ECF Nos. 20-1 and 21. Access is restricted to attorneys appearing for the parties and court personnel.
>
> Dated: January 26, 2024
> New York, New York
>
> SO ORDERED
> /s/ Robyn F. Tarnofsky
> ROBYN F. TARNOFSKY
> UNITED STATES MAGISTRATE JUDGE

Re: ***Head Sport GmbH v. Up Town Sport, Inc. and Jenny Sprizzo***
    **Case No. 23-cv-10172 (LAK) (RFT)**

Dear Judge Tarnofsky:

This firm represents Plaintiff Head Sport GmbH ("Head") in the above-referenced action. Pursuant to the Court's Individual Practices in Civil Cases Rule III.E and the Second Circuit's opinions in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) and *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132 (2d Cir. 2016), Head respectfully files this letter-motion for an ***urgent*** request that the Court seal Defendant Jenny Sprizzo's January 17, 2024 letter to the Court and its attachments placed on the public docket yesterday (i.e., January 24, 2024) at ECF No. 21, as well as the version of the letter at ECF No. 20-1 (ECF Nos. 20-1 and 21, together the "Sprizzo Letter"). As per the Court's Individual Practices, Head is contemporaneously filing copies of these documents, publicly, with Head's proposed redactions, and copies, under seal, with the proposed redactions highlighted.

As detailed below, the Sprizzo Letter entered on the public docket yesterday includes Head's commercially sensitive information, including the same categories of information that Head sought and obtained the Court's permission to file under seal in connection with Head's Complaint and its exhibits, namely: details of the parties' license agreement and Defendants' performance under that agreement, quantities and prices of goods manufactured under the license agreement, and details of payments owed to and by the parties under the license agreement.[1] The continued public disclosure of this competitively sensitive information will subject Head to financial harm and cause significant competitive disadvantage. Head thus seeks to have the Sprizzo Letter placed under seal and replaced on the public record with the accompanying redacted version.

To determine whether sealing is appropriate, courts in the Second Circuit apply the three-step test described in *Lugosch,* 435 F.3d 110 (2d Cir. 2006). Under this test, the court must: (i) determine whether the documents in question are "judicial documents;" (ii) assess the weight of

---

[1] *See* accompanying Declaration of Amanda Neil ("Neil Decl."), previously filed with Head's motion to file its redacted complaint under seal, which was granted.

GIBBONS P.C.

Honorable Robyn F. Tarnofsky, U.S.M.J.
January 25, 2024
Page 2

the common law presumption of access to the materials; and (iii) balance competing considerations against the presumption of access. *Id.* at 119–20; *see also Bernstein*, 814 F.3d at 142.

While "[t]here is a common law presumption in favor of permitting public access to judicial documents," a "court balances this common law presumption of access against competing comparisons, including the privacy interests of those resisting disclosure." *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649 (S.D.N.Y. 2011) (citing *Lugosch*, 435 F.3d at 119). Competitively sensitive information, for example, should be protected against public disclosure if such disclosure would cause significant and irreparable competitive injury. *See, e.g., Standard Inv. Chartered, Inc. v. Fin. Indus. Reg. Auth.*, 347 F. App'x 615, 617 (2d Cir. 2009) (finding that presumption of public access was overcome when disclosure would subject a party to financial harm and cause significant competitive disadvantage).

Accordingly, courts in this District routinely seal documents to prevent the disclosure of a party's confidential or competitively sensitive business information. *See, e.g., PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14-5183, 2014 WL 4979316, at *3 (S.D.N.Y. Oct. 6, 2014) (granting motion to seal "with respect to those documents . . . containing sensitive commercial information affecting the parties' ongoing relationship"); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting motion to redact documents containing confidential information, including policies and sales); *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-1308, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (granting request to seal documents concerning, *inter alia*, financial information).

Here, Head seeks to redact the following limited highly confidential, commercially sensitive information in the Sprizzo Letter (the "Confidential Information"):

- The Sprizzo Letter reveals sensitive commercial information regarding the quantity of goods manufactured under the parties' license agreement, the cost of those goods, payments made, and royalty payments owed. (ECF No. 21, Pages 3-4, 6-7 of 93; ECF No. 20-1, Pages 5-6, 8-9 of 10).

- Sprizzo Letter Attachments 2 and 16 include copies of Head's October 3, 2022, Termination Warning Letter to Defendants, which contains information regarding royalty rates and guaranteed minimum royalty payment requirements. (Pages 12 and 67).

- Sprizzo Letter Attachments 3, 5, 6, 9-11, 23-25, and 27-28 comprise invoices for orders that Defendants placed for goods under the license agreement, which include order quantities and prices. (Pages 14-15, 18-21, 32-33, 44-55, 83-86, and 88-90).

GIBBONS P.C.

Honorable Robyn F. Tarnofsky, U.S.M.J.
January 25, 2024
Page 3

- Sprizzo Letter Attachment 7 includes an invoice for, and correspondence related to, an order that Defendants placed for goods under the license agreement, including order quantities. (Pages 38-39).

- Sprizzo Letter Attachment 8 includes the identity of Defendants' primary customer for goods made under the license agreement. (Page 40).

- Sprizzo Letter Attachments 13 and 14 include correspondence between Defendants and their supplier discussing order quantities and pricing. (Page 60-64).

- Sprizzo Letter Attachment 17 includes correspondence between Plaintiff and Defendants reciting details of royalty payments required under the parties' license agreement. (Page 70).

- Sprizzo Letter Attachments 18-22 include correspondence between Plaintiff, Defendants, and Plaintiff's new licensee that includes a confidential settlement proposal regarding royalty payments owed to Plaintiff, the terms of a proposed purchase for unsold inventory, and related excerpts from the parties' license agreement. (Pages 71-79).

- Sprizzo Letter Attachment 26 is an agreement between Defendants and their supplier setting out prices, quantities, and terms of sale of unsold inventory to Plaintiff's new licensee. (Page 87).

- Sprizzo Letter Attachment "About LA" is correspondence between Defendants and a supplier regarding the price of goods to be ordered under the license agreement. (Page 91).

Head considers the Confidential Information included in the materials set out above to be highly confidential and commercially sensitive, particularly for its competitors and other licensees. *See* generally Neil Decl. ¶¶ 2-3. Head take substantial efforts to maintain the confidentiality of these categories of commercially sensitive, non-public information. *Id.* ¶ 3. If the Confidential Information were to become available to the public or Head's competitors or other licensees, Head would suffer serious commercial injury and the disclosure would pose a substantial risk of harm to Head's competitive position. *Id.* ¶ 4. Disclosure of the Confidential Information would adversely impact and seriously damage Head's position in the marketplace and allow Head's competitors to gain insight into Head's business and strategies to Head's detriment. *Id.* Further, disclosure of the Confidential Information would result in competitive harm to Head with licensees, including, for example, in future negotiations of similar agreements with other licensees or prospective licensees. *Id.*; *see, e.g., Gracyzk v. Verizon Commc'ns, Inc.*, No. 18-6465, 2020 WL 1435031, at *8-9 (S.D.N.Y. Mar. 24, 2020) (granting party's request to seal portions of contracts

GIBBONS P.C.

Honorable Robyn F. Tarnofsky, U.S.M.J.
January 25, 2024
Page 4

that contained "sensitive financial information" that would cause them to suffer "competitive disadvantage in future negotiations"). To protect parties from harm of this nature, courts in this District have generally exercised their discretion to seal similar information. *See, e.g., KeyBank Nat'l Ass'n v. Element Transp. LLC*, No. 16-8958, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) ("KeyBank asserts that the sensitive nonparty financial information it seeks to protect is all the data a competitor would need to determine its valuation of the leases. This competitive injury is sufficiently serious to warrant protection."). In contrast, there is no benefit to the public from disclosure of the Confidential Information sought to be sealed here.

Head has narrowly tailored the redactions in the Sprizzo Letter to protect this commercially sensitive and confidential information. Thus, the competitive disadvantages to Head from disclosure of the redacted information outweighs the interest of the public. *See Lugosch*, 435 F.3d at 120.

Accordingly, Head respectfully requests that the Court place the Sprizzo Letter (ECF Nos. 20-1 and 21) under seal. We thank the Court for its consideration of this request and remain available at the Court's convenience to address any questions or concerns.

Respectfully submitted,

s/ William P. Deni, Jr.
William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Pennsylvania Plaza
Floor 45, Suite 4515
New York, New York 10119
(212) 613-2000
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

Danny M. Awdeh (*pro hac vice* to be filed)
Lisa Peller London (*pro hac vice* to be filed)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

*Attorneys for Plaintiff
Head Sport GmbH*

Enclosures

cc:  Jenny Sprizzo (via First-Class mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEAD SPORT GMBH,<br><br>                Plaintiff,<br><br>v.<br><br>UP TOWN SPORT INC. and<br>JENNY SPRIZZO,<br><br>                Defendants. | Case No. _____ |

**DECLARATION OF AMANDA NEIL IN SUPPORT OF PLAINTIFF'S MOTION TO FILE CIVIL CASE WITH REDACTED COMPLAINT**

I, Amanda Neil, declare as follows:

1. I am the General Counsel of the Head Group. I am familiar with the facts asserted herein, and I make this declaration based on my personal knowledge in support of Plaintiff's Motion to File Civil Case With Redacted Complaint.

2. Head Sport GmbH ("Head") seeks to redact and seal the following highly confidential, commercially sensitive information in the Complaint (the "Confidential Information"):

   A. Exhibit A is a license agreement that contains sensitive and proprietary commercial information, including royalty rates and guaranteed minimum royalty payment requirements; marketing channels, plans, and contribution requirements; login information for Head's marketing platform; banking information; and sales and distribution channel information.

1

B. Exhibit B is a December 6, 2021 Side Letter extending the license term and contains sensitive commercial information regarding royalty rates and guaranteed minimum royalty payment requirements.

C. Exhibit C is Head's Termination Warning Letter to Defendants, which includes sensitive commercial information regarding royalty rates and guaranteed minimum royalty payment requirements.

D. Paragraphs 27-29 of the Complaint recite commercially sensitive terms of the parties' license agreement, including scope of the licensed goods; scope of the licensed territory, and royalty rate.

E. Paragraphs 31-34 of the Complaint recite commercially sensitive terms of the parties' license agreement, including guaranteed minimum royalty payment amounts and penalties for delinquent payments.

F. Paragraph 36 of the Complaint details distribution channels allowed under the parties' license agreement.

G. Paragraph 46 of the Complaint details the financial terms under which Head may purchase the licensee's undisposed stock when the license terminates.

H. Paragraph 49 of the Complaint recites commercially sensitive financial terms from Head's Termination Warning Letter, including the amounts of guaranteed minimum royalty payments.

I. Paragraph 50 of the Complaint details the amount of the guaranteed royalty payments the licensee was required to pay Head.

J. Paragraphs 62, 70, 74, 77, and 79 of the Complaint detail the quantity of goods that the licensee ordered from its suppliers.

3. Head considers the Confidential Information to be highly confidential and commercially sensitive, particularly for its competitors and other licensees. Head take substantial efforts to ensure that this commercially sensitive, non-public information is maintained as confidential.

4. If Head's Confidential Information were to become available to the public or Head's competitors or other licensees, Head would suffer serious commercial injury and the disclosure would pose a substantial risk of harm to Head's competitive position. Disclosure of Head's Confidential Information would adversely impact and seriously damage Head's position in the marketplace and allow Head's competitors to gain insight into Head's business and strategies to Head's detriment. Further, disclosure of the Confidential Information would result in competitive harm to Head with licensees, including, for example, in future negotiations of similar agreements with other parties.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of November 2023.

3